THE STATE v. T. N. DOWELL.

*Assault—Rape—Husband and Wife.*

A husband who, by threats to kill in event of refusal, accompanied by presenting a loaded gun at the parties, compels his wife to submit to, and a man to attempt, sexual connection, is guilty of an assault with intent to commit a rape upon his wife.

MERRIMON, C. J., dissented.

This was an INDICTMENT for an assault with intent to commit a rape, tried at Spring Term, 1890, of ROWAN Superior Court, *Shipp, J.,* presiding.

The defendant was found guilty, and appealed from the judgment.

The facts are stated in the opinion.

*The Attorney General,* for the State.
No counsel *contra.*

SHEPHERD, J.: Ordinarily, precedent is grateful to the judicial mind as something approved and steadfast on which it may rest with confidence, but sometimes cases arise of such exceptional enormity that, for the fair name of humanity, the Judge would hope to find no counterpart in criminal annals. We incline to believe that the case under consideration is one of such bad eminence. Unmatched in iniquity, as it appears to be, it is hoped, however, that the application of a few elementary principles will harmonize the conclusion to which we have arrived, not only with our moral conceptions of what should be the law, but also with its strict formal administration.

The facts are abhorrently simple. The white husband of a white wife, under menace of death to both parties in case of refusal, and supporting his threat by a loaded gun

held over the parties, constrains a colored man to undertake, and his wife to submit to, an attempted sexual connection. The details of this shocking transaction are so disgusting that we will not stain the pages of our reports with their particular recital. Suffice it to say, that under the coercion of the defendant, Lowery, the colored man did *actually* make the attempt. Indeed, he did everything necessary to constitute the crime of rape except actual penetration. Fortunately, the fright and excitement rendered him incapable of consummating the outrage, which, as we understand the case, he would otherwise have perpetrated; and alike fortunately, at perhaps the critical moment, the gun discharging itself in the hands of the unnatural husband, the enforced assailant was enabled to effect his escape.

Under the laws of this State the offence of an assault with intent to commit rape, although subject to very severe punishment, is technically a misdemeanor, and, there being no degrees in this class of crimes, it must follow that if the defendant is guilty at all, he must be guilty as a principal. The defendant strangely insists that he is not guilty because he is the husband of the prosecutrix, and he relies as a defence upon the marital relations, the duties and obligations of which he has, by all the laws of God and man, so brutally violated.

In our opinion, in respect to this offence, he stands upon the same footing as a stranger, and his guilt is to be determined in that light alone. The person of every one is, as a rule, jealously guarded by the law from any involuntary contact, however slight, on the part of another. The exceptions, as in the case of a parent, or one *in loco parentis*, moderately chastising a child (*State* v. *Harris*, 63 N. C., 1); or a school-master a pupil (*State* v. *Pendergrass*, 2 Dev. & Bat., 365, and *Boyd* v. *State*, an Alabama case, recently reported in 11 Albany Law Journal, 335), are strict and rare. It was at one time held in our State that the relation of husband

and wife gave the former immunity, to the extent that the Courts would not go behind the domestic curtain and scrutinize too nicely every family disturbance, even though amounting to an assault. *State* v. *Rhodes*, Phil. Law, 453. But since *State* v. *Oliver*, 70 N. C., 60, and subsequent cases, we have refused "the blanket of the dark" to these outrages on female weakness and defencelessness. So it is now settled that, technically, a husband cannot commit even a slight assault upon his wife, and that her person is as sacred from his violence as from that of any other person. It is true that he may enforce sexual connection, and, in the exercise of this marital right, it is held that he cannot be guilty of the offence of rape. But it is too plain for argument, that this privilege is a personal one only. Hence if, as in *Lord Audley's* case, 3 Howard State Trials, the husband aids and abets another to ravish his wife, he may be convicted as if he were a stranger. The principle is thus tersely expressed by Sir Matthew Hale: "For though in marriage she hath given up her body to her husband, she is not to be by him prostituted to another." Hale P. C., 629; 2 Bishop Cr. Law, 1135; 3 Howard St. Trials, 401.

It thus appearing, we think, beyond all question, that the defendant in this indictment is to be regarded as a stranger, we will further consider the case in that aspect alone.

It is contended that, as Lowery acted under coercion and was, for that reason, excusable, there was no *intent* to commit rape, and, therefore, the defendant cannot be convicted. It will be observed that the intent of Lowery to commit the offence is not determined alone by the presumption that every one is presumed to intend the natural consequences of his act; but he testifies that he did actually attempt to have sexual connection. Here, then, we have a specific actual intent to commit the foul deed, and can it be that he who constrains the will of another to commit such a crime is to be permitted to shield himself upon the ground that there

was an entire absence of criminal intent? If this be true, then one who coerces another to shoot down a third person in cold blood is not guilty of murder, because there is no intent for which the person doing the shooting is criminally responsible. The law, in such a case, couples the act of the instrument with the intent of the instigator, and, in this way, he is held guilty of murder. And this is true also where the instrument is under the age of seven, and conclusively presumed to be incapable of having any criminal intent. So, too, if one is indicted under our statute for shooting at a railroad train with intent to injure it, and it appears that he coerced another to do the shooting, can it, with reason, be said that he is not guilty, because his instrument did not have an intent to inflict any injury? These, and other examples which we could cite from our reports, well illustrate the principle upon which our case depends, and especially is this so when, as we have said, the specific intent is expressly shown by the testimony. We are clearly of the opinion that the unlawful act committed in pursuance of the combined intents of the defendant and his enforced instrument are amply sufficient to sustain the conviction.

While placing our decision upon this ground, we are not prepared to say that, under the circumstances, Lowery would have been excusable had he completed the offence. We leave this an open question, remarking, however, that the *tabula in naufragio* of Lord Bacon has been well nigh submerged by judicial and critical casuists. See Wharton, §§ 560 and 561, and notes to second edition; *United States* v. *Holmes*, 1 Wallace, 1; see also COLERIDGE, C. J., in the case of the Migniotte, decided in 1884. But mark the diversity. There, the displaced struggler for life was, by clinging to the plank, insufficient for two, as much attacking his companion in shipwreck as if he were firing at him with a pistol. In our case the victim is entirely innocent, in no way threatening by her act or deed any harm to the attempted

ravisher. In this view of the case, let us briefly refer to the authorities.

In Broom's Legal Maxims, 17, 18, it is said: "In accordance with the legal principle, *necessitas inducit privilegium*, the law excuses the commission of an act *prima facie* criminal, if such act be done involuntarily and under circumstances which show that the individual doing it was not really a free agent. Thus, if A, by force, takes the hand of B, in which is a weapon, and therewith kills C, A is guilty of murder, but B is excused; though if merely moral force be used, as threats, duress of imprisonment, or even an assault, to the peril of his life, in order to compel him to kill C, this is no legal excuse." For this, is cited 1 Hale P. C., 434, which seems to be entirely in point. East, in his Plea of the Crown, vol. 1, page 294, undertakes to argue that "if the commission of treason may be extenuated by the fear of present death, there seems to be no reason why homicides (or any of the other capital offences of course) may not also be mitigated upon the like considerations of human infirmity." Bishop's Cr. Law, 348. To this, however, an answer is found in 4 Blackstone, 30, where he says: "In time of war or rebellion, a man may be justified in doing many treasonable acts by compulsion of the enemy, or rebels, which would admit of no excuse in the time of peace. This, however, seems only, or, at least, principally, to hold as to positive crimes so created by the laws of society, and which, therefore, society may excuse, but not as to natural offences so declared by the law of God * * *. And, therefore, though a man may be violently assaulted, and hath no other possible means of escaping death but by killing an innocent person, this fear and force shall not acquit him of murder, for he ought rather to die himself than escape by the murder of an innocent." If this be so, and the crime of rape is considered so heinous as to be punishable in the same way as murder, it would seem that "human infirmity"

ought not to be tolerated by our laws to the extent of *excepting* ~~exclud~~-ing one for the violation of female virtue on the plea of danger to himself, however great or imminent. For the reasons first stated, we think that the ruling of his Honor was correct, and that there is no error.

MERRIMON, C. J., dissenting: The horrible and detestable purpose of the defendant in doing the acts which constitute the criminal offence committed by him against his wife cannot warrant what I deem a misapplication of well established principles of criminal law. In the nature of the marriage relation, the husband himself cannot ravish his wife; nor, for like reasons, can he, in a legal sense, assault her with the intent to commit a rape upon her. He can only commit the offence of rape, or that of assault with intent to commit a rape against his wife, by procuring, aiding, abetting or encouraging another to commit these offences. His offence in such case depends necessarily upon the perpetration of the principal offence by another party.

In this case, the negro named did not commit a rape upon the wife of the defendant, nor did he assault her with such intent. There was a total absence of such intent on his part, and such intent was an essential element of this offence. Then, in the nature of the matter, how can the defendant be chargeable with the particular offence charged against him in the indictment? As the negro committed no assault with intent to commit rape, so the defendant did not.

It is said, Shall the defendant go quit? Has he committed no offence? Most unquestionably he shall not go quit. He has committed an offence—a very serious one. He is chargeable with an assault upon his wife with a deadly weapon and with the intent to kill, and a like assault upon the negro.

It is said the punishment of the offence last mentioned is not adequate. It may be very severe, but it may be said as

well that the punishment for the offence as charged is not adequate. This, however, is no argument—not the slightest reason pertinent here. The Courts have nothing to do with the punishment of offenders further than to impose the same in the cases, and as required and allowed by law. I will not pursue the subject further.

*Per Curiam.*                                                   Affirmed.