STATE OF NORTH CAROLINA v. JIMMY BRAXTON, DAVID LEE BURDEN, BOBBY RAY HOWELL, AND LEE VERNON McIVER

No. 17

(Filed 17 April 1978)

### 1. Criminal Law § 92.1— rapes by four defendants—consolidation proper

Cases against four defendants were properly consolidated for trial, though each of the successive rapes of the prosecutrix was a separate criminal offense, since all of the offenses were parts of a common scheme or plan and each of the defendants was present, aiding and abetting in each offense; moreover, consolidation of one defendant's case with the others for trial did not deprive defendant of a fair trial because statements made to investigating officers by his codefendants were admitted in evidence over his objection, since the trial court required that each statement of the defendants be carefully edited so as to delete therefrom any reference to any other defendant. G.S. 15A-926(b)(2); G.S. 15A-927(c)(1).

### 2. Criminal Law § 66.1; Rape § 5— identification of defendant as rapist—opportunity for observation—sufficiency of evidence

Contention by one defendant in a first degree rape prosecution that his motion for nonsuit should have been allowed on the basis of the weakness of the prosecuting witness's identification of him is without merit, since the evidence tended to show that the victim first observed defendant in a well lit parking lot when he dragged her from her car; she was transported many miles on a brightly moonlit night, during which time defendant was sitting immediately beside her; thereafter, she was raped successively by defendant and his three companions in a moonlit abandoned house; and on the ride from the place where the victim was seized to the house where she was raped, the victim and her assailants passed through the well lighted streets of the City of Fayetteville and thereafter through the lighted streets of a small town.

### 3. Criminal Law § 66.18— identification of defendant—no voir dire required

Even if one defendant's general objection with no request for a voir dire was sufficient to require the court to conduct such an examination to determine the admissibility of the testimony of a witness identifying the defendant as her assailant, the failure to conduct such voir dire was harmless error beyond any reasonable doubt, since none of the four defendants made a motion, prior to trial, to suppress identification testimony by the witness; there was no suggestion in the record of any questionable pretrial identification procedures; there was no indication in the record that the witness saw any of the defendants from the time they abandoned her on a rural road after the alleged offenses to their preliminary hearing upon the present charges; there was no suggestion in the record that she ever identified, or was requested to identify, any other person than these four defendants as one of her assailants on this occasion; her opportunity to observe each defendant at the time of the occurrences was ample; and the victim's testimony, given upon a voir dire requested by another defendant to determine admissibility of identification testimony,

that the four defendants were her assailants and that her identification of them was based on her observation of them at the crime scene removed any possible doubt as to the admissibility of the victim's identification testimony.

**4. Criminal Law § 66.12— consolidation against multiple defendants—basis of identification of defendant as rapist**

Contention by one defendant in a rape trial that the prosecuting witness identified him in court as one of her assailants solely because the cases against four defendants were consolidated and, consequently, he and his three codefendants were present in the courtroom as the defendants charged with the offenses is without merit since the victim testified that she observed defendant on the night of the crime in a well lit parking lot, through the well lit streets of Fayetteville, and over moonlit roads for an extended period of time; during the ride, the victim struggled with defendant over possession of a gun which discharged, wounding defendant in the finger; on the day following the alleged crime, an officer who obtained a statement from defendant observed a wound on one of defendant's fingers; and defendant's own statement to the officer fully corroborated the victim's testimony as to defendant's part in her abduction and rape.

**5. Criminal Law § 75— defendant's oral statement reduced to writing—admissibility**

The trial court did not err in admitting into evidence a statement allegedly made by one defendant in a rape case where the evidence tended to show that the statement in question was compiled by an officer from notes made by him of defendant's oral statements, which statements were made after defendant was given the *Miranda* warnings; the written statement was then shown to defendant; defendant signed the statement; and defendant pointed out no discrepancies between the written statement and his oral statement on the voir dire to determine admissibility of the written statement.

**6. Criminal Law § 33— relevancy of evidence—test**

The test of relevancy of evidence is whether it tends to shed any light on the subject of the inquiry or has as its only effect the exciting of prejudice or sympathy.

**7. Criminal Law § 33.1— four rapists—evidence of each rapist's acts relevant**

In a first degree rape prosecution where the evidence tended to show that the victim was abducted by four men from a parking lot, transported over some distance to an abandoned house and raped, the entire occurrence from the abduction to the final release of the victim was a unified course of criminal activity in every part of which each of the four defendants was a participant; consequently, all of the evidence recounting acts of the several defendants was relevant upon the inquiry as to the guilt of each and was properly admitted unless some other rule of evidence required its exclusion.

**8. Rape § 5— first degree rape—sufficiency of evidence**

The trial court properly denied one defendant's motion for nonsuit in a first degree rape prosecution where the evidence tended to show that defendant was the driver of the car in which the victim was transported from the

point of abduction in Fayetteville to an abandoned house in another county where defendant and his companions raped the victim, and the victim testified that defendant twice had sexual intercourse with her without her consent.

**9. Criminal Law § 75— defendant's oral statement reduced to writing—admissibility**

The trial court properly allowed into evidence a statement made by defendant to an investigating officer where the evidence tended to show that defendant was informed of his constitutional rights before he made the statement and that he signed a written waiver of those rights; no promises or threats were made to defendant in order to procure his statement; and, after the interviewing officer reduced defendant's oral statement to writing, defendant said that the written statement was correct and signed it.

**10. Searches and Seizures § 18— search of vehicle—consent given by owner**

The trial court properly allowed into evidence items found in a car allegedly used in the perpetration of a rape, since the owner of the car, who was the mother of one defendant, had consented to the search of the automobile by the officers.

**11. Criminal Law § 57— evidence of damage from firearm—witness's qualifications not questioned—opinion admissible**

In a prosecution for rape where the victim testified that she was abducted by the four defendants, that a struggle for possession of a gun took place during her abduction, and that the gun was fired inside the car, a detective on the sheriff's staff with 35 years experience in law enforcement and military service could properly express an opinion that damage to the inside of the car was caused by a bullet, since the qualifications of the witness to testify were never questioned by any defendant; the testimony corroborated that of the prosecutrix; and the testimony in question was not given before the jury but in its absence during the course of a voir dire examination.

**12. Criminal Law § 74.3— confession referring to codefendants—edited confession admissible**

A statement made by one defendant which had been edited to comply with the rule of *Bruton v. U. S.*, 391 U.S. 123, by deleting references to the other defendants was not inadmissible because it was not the complete statement as originally signed by defendant.

**13. Bills of Discovery § 6— discovery of aliases of prosecutrix—maiden name not an alias**

A married woman's maiden name is not an alias; therefore, the district attorney was not required to furnish such information to defendant pursuant to a discovery order requiring disclosure of all aliases by which the prosecutrix had been known.

**14. Bills of Discovery § 6— evidence withheld after discovery order—exclusion of evidence discretionary**

Since G.S. 15A-910 provides that the court "may" forbid the introduction of evidence not disclosed to the adversary in accordance with a discovery order, the admission or exclusion of such evidence is left in the discretion of the trial court.

APPEALS by each defendant from *Preston, J.,* who sentenced each to imprisonment for life upon his conviction of first degree rape.

The evidence before the jury on behalf of the State, the defendants having offered no evidence except upon various voir dire examinations in the absence of the jury, was sufficient to show the following:

On the evening of 11 February 1977, the prosecutrix, married and living with her husband in Raeford, North Carolina, drove alone to Fayetteville to attend a moving picture theatre. She parked her car in a lighted parking lot on Bass Street, the windows being rolled up and all the doors locked. Before she could get out of the car, another car, a white, two-door Pontiac Grand Prix, drove into the parking space beside her on the right. The defendant Burden and the defendant Braxton got out of that car, the defendant McIver being its driver and the defendant Howell being in the right front seat.

Burden went immediately to the driver's side of the woman's car and Braxton to the right side of it. Burden pointed a pistol at her and demanded that she roll down the window. When she did so, he, with the aid of Braxton, pulled her out of the car and forced her into the back seat of the white, two-door Pontiac Grand Prix driven by McIver. Burden and Braxton then got into the back seat with her and the car drove off, the woman screaming for help.

Pedestrians observed the car driving away, heard the woman's outcries, noted the license number and promptly reported the occurrence and license number to a nearby police officer. A report of the occurrence, including a description of the car and its license number, was then broadcast on the Police Information Network. By this means, the car was identified as a vehicle registered in the name of McIver's mother, a resident of Lumberton.

With McIver driving, Howell in the front passenger seat and Braxton and Burden in the rear seat with the woman, Burden waving the pistol around and pointing it at her head, the car drove out of Fayetteville and over rural roads into Robeson County. In the course of this driving, the woman, at one time, seized

the gun and pulled it from Burden's hand, firing it into the upholstery of the car until all the ammunition then in the pistol was discharged. In the process, Burden, in attempting to recover the pistol from the woman, was shot in one finger. The pistol was then wrestled away from the woman and reloaded.

After driving some distance, the car was brought to a stop in an isolated rural area and, the other three defendants getting out of the car, Howell got into the back seat and forcibly had sexual intercourse with the woman, penetrating her without her consent.

Thereupon, the other defendants returned to the car and they drove to an abandoned house, located in an isolated rural area of Robeson County within a mile or two of the residences of the several defendants, forced the woman into the house and down upon the floor which was littered with broken window glass. Each of the defendants then and there had sexual intercourse with her forcibly and against her will, first one and then other members of the group holding the pistol and Braxton firing it into the floor beside her head as she lay there. Finally, she was ordered to get up and put on part of her torn clothing and return to the car.

Driving a bit further, the defendants put the woman out on an isolated rural road and drove away. She went to a residence in the vicinity and the police were called. She described to the officers her assailants and the car, telling them of the above events.

With the aid of the reported license number and the victim's description of the vehicle, the officers located it that night in the yard of the residence in which McIver and his mother lived. A search of the car revealed bullet holes in its upholstery and floor, spent pistol cartridges and certain personal articles identified by the victim as hers. Subsequently, an abandoned house, meeting the description given by the victim of the house to which she had been taken and identified by her as that house, was searched by investigating officers who found therein, and in the yard of the house, other personal articles and partially burned articles of clothing, all identified by the victim as hers.

Over objection by each defendant, the four cases were consolidated for trial. Repeatedly, during the course of the trial, the jury was sent from the courtroom for the holding of voir dire ex-

aminations prior to the admission of evidence offered by the State. At one of these defendants Burden and Howell testified, at another Howell, alone of the defendants, testified, and at a third the mother and brother of the defendant McIver testified. Otherwise, the defendants offered no evidence. The printed record contains 391 pages of what transpired at the trial, of which 275 pages are concerned only with evidence taken on the various voir dire examinations in the absence of the jury and arguments of counsel with reference thereto, the jury having been sent from the courtroom on 12 separate occasions for this purpose. The facts therein developed, insofar as pertinent to this appeal, are set forth in the opinion.

There being no exception taken by any defendant to the charge of the trial judge to the jury, the charge is not included in the record on appeal.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Associate Attorney, for the State.*

*Arthur L. Lane for Defendant Appellant McIver.*

*Adelaide G. Behan for Defendant Appellant Howell.*

*Ertle K. Chavis for Defendant Appellant Burden.*

*John Wishart Campbell for Defendant Appellant Braxton.*

LAKE, Justice.

The four defendants were represented by separate counsel, both at trial and on appeal. Each appealed from a sentence to life imprisonment imposed upon him. Their assignments of error are not the same in all respects and they filed separate briefs. Consequently, we discuss their appeals separately.

### APPEAL OF THE DEFENDANT BRAXTON

In his statement of the case on appeal, the defendant Braxton assigned as error: (1) The admission of various portions of the State's evidence, this assignment being based upon 35 unrelated exceptions; (2) the denial of 18 motions of widely varying nature made by this defendant before trial, during its progress and after the verdict; and (3) the signing and entry of the judgment.

The first two assignments obviously violate Rule 10(c) of the Rules of Appellate Procedure, 287 N.C. 671, 699, which states that each assignment of error "shall, so far as practicable, be confined to a single issue of law." This flagrant disregard for our rules is equally evident in the appeals of the other defendants also. Due to the serious nature of these cases, however, we have given careful consideration to all assignments of error made by each defendant.

Assignment of Error No. 3 is formal and requires no discussion. It presents for review only the record proper. *State v. Wilson*, 289 N.C. 531, 538, 223 S.E. 2d 311 (1976). The trial court had jurisdiction and no error appears on the face of the record proper. Furthermore, this assignment of error was not brought forward into the brief on appeal and is, therefore, deemed abandoned. Rule 28(a) of the Rules of Appellate Procedure, 287 N.C. 671, 741. This assignment is, therefore, overruled.

Assignment of Error No. 1 is, likewise, not brought forward into the brief on appeal and is, for the same reason, deemed abandoned. We have, nevertheless, carefully examined each of the exceptions upon which this assignment of error is based and find no merit in any of them. It would serve no useful purpose to discuss these rulings of the trial court *seriatim*.

In support of his Assignment of Error No. 2, the defendant Braxton contends that the court erred in denying his motion for a separate trial, allowing the motion of the District Attorney to consolidate the four cases for trial and in denying the motion of this defendant for a judgment of nonsuit. The remaining exceptions to the rulings of the trial court upon the motions of this defendant, included within his Assignment of Error No. 2, are not brought forward into the brief and, for the above mentioned reason, are deemed abandoned. We have, nevertheless, considered each of them and find each without merit. In the contention so made in the brief concerning the consolidation of the cases for trial and the denial of the motion for judgment of nonsuit, we also find no merit.

[1] G.S. 15A-926(b)(2) provides:

"(2) Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial:

a. When each of the defendants is charged with accountability for each offense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others."

The record shows that the State filed written motions prior to trial to consolidate the four cases here in question. While each of the successive rapes of the prosecutrix was a separate criminal offense, the record clearly shows that all of the offenses were parts of a common scheme or plan and each of the defendants was present, aiding and abetting in each offense. Under these circumstances, the granting of the motion for consolidation for trial rests in the sound discretion of the trial judge, and in the absence of a showing that the joint trial deprived the defendant of a fair trial, his exercise of that discretion by consolidating the cases for trial will not be disturbed on appeal. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968); *State v. Grundler*, 251 N.C. 177, 191, 111 S.E. 2d 1 (1959), *cert. den.*, 362 U.S. 917 (1960).

The defendant Braxton asserts that the consolidation of his case with the others for trial deprived him of a fair trial because, in violation of the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968), statements made to investigating officers by his codefendants were admitted in evidence over his objection.

G.S. 15A-927(c)(1) provides:

"(1) When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court must require the solicitor to select one of the following courses:

a. A joint trial at which the statement is not admitted into evidence; or

b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or

c. A separate trial of the objecting defendant."

In the present case, the trial judge chose, and the District Attorney complied with, the second of these alternatives. Statements made to investigating officers by defendants Burden, Howell and McIver were the subjects of extended voir dire examinations. As a result, the trial court ruled that each such statement was admissible against the declarant, but required each such statement to be carefully edited so as to delete therefrom any reference to any other defendant. This was done prior to the introduction of such statement in evidence, the record indicating that all counsel participating in the trial collaborated in such editing. This procedure and the allowance of each such statement in evidence did not violate either G.S. 15A-927(c) or the rule of *Bruton v. United States, supra.* The admission of such statements was not error as to the defendant Braxton. He is not mentioned in any of the statements so edited and admitted.

[2] The contention of the defendant Braxton that his motion for judgment as of nonsuit should have been allowed on the basis of the weakness of the identification of Braxton by the prosecuting witness is utterly without merit. A motion for a judgment of nonsuit is properly denied when the evidence, including evidence erroneously admitted (*State v. Hunt,* 289 N.C. 403, 222 S.E. 2d 234, death sentence vacated, 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976), considered in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, is sufficient to afford a reasonable basis for the finding by the jury that the offense charged has been committed and the defendant was the person who committed it. *State v. Covington,* 290 N.C. 313, 327, 226 S.E. 2d 629 (1976); *State v. Warren,* 289 N.C. 551, 559, 223 S.E. 2d 317 (1976); *State v. Curry,* 288 N.C. 660, 220 S.E. 2d 545 (1975); *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968).

The evidence for the State is abundantly sufficient to meet this test. The testimony of the prosecuting witness, taken to be true, as it must be upon such a motion, shows successive, forcible rapes by this defendant and each of his companions. Her identification of Braxton in court as one of her assailants was clear and unequivocal. She testified that she was dragged by Braxton and Burden from her automobile, which was parked in a parking lot in which the lighting was good enough to see "pretty well." She was forced by them into the automobile parked beside her own and transported many miles, on a brightly moonlit night, during which Braxton was sitting immediately beside her and, thereafter, she was raped successively by him and his three companions in the moonlit abandoned house, into which they pushed her. It was Braxton who there virtually disrobed her and, following the successive rapes, compelled her to commit the revolting act of oral sex upon him. It was he who fired the pistol into the floor whereon she lay, the bullet striking the floor very close to her head. On the ride from the place where she was seized to the house wherein she was so raped, they passed through the well lighted streets of the City of Fayetteville and thereafter through the lighted streets of a small town. Under these circumstances, it is absurd to contend that the State's evidence is not sufficient to go to the jury on the question of Braxton's identity.

The identification of Braxton as one of the assailants is, furthermore, corroborated by the testimony of his barber that, on the day following this occurrence, Braxton had his head shaved, thus altering his appearance and that he said to another customer, who thereafter entered the barber shop, "I'm glad you can't recognize me because I got to leave town." Braxton was found by the police, three days later hiding in a closet.

After the prosecutrix had testified to the lighting in the parking lot from which she was abducted and that, hearing a knocking upon the window of her car, she turned and looked into the face of a black male standing at the window, she was asked if she recognized that man in the courtroom, to which she replied in the affirmative. Thereupon, each of the defendants objected. The objections were overruled and, with no request for a voir dire examination of the witness, she proceeded to identify that man as Burden. She testified that she reached to start her car again and thereupon Burden pulled the gun from under his jacket, stuck it

up to the window, pointed it directly at her head and directed her to roll down the window. She looked to the other side to see if she could escape through that door and, at that time, saw Braxton, identified by her in court, on the other side of her car. There was no objection specifically directed to this in-court identification of Braxton. Thereafter, without objection concerning his identification, the prosecutrix repeatedly testified concerning his presence and conduct throughout the series of events.

[3] Assuming, without deciding, that, under these circumstances, the general objection by Braxton, above noted, with no request for a voir dire examination of the witness, was sufficient to require the court to conduct such an examination, in the absence of the jury, as to the admissibility of the testimony of this witness concerning the identity of Braxton as one of her assailants, the failure to conduct such voir dire was harmless error beyond any reasonable doubt.

No defendant made a motion, prior to trial, to suppress identification testimony by this witness. We find in the record no suggestion whatever of any questionable pretrial identification procedures. Nothing in the record indicates that this witness saw any of these defendants from the time they abandoned her on the rural road after the alleged offenses to their preliminary hearing upon the present charges. There is no suggestion in the record that she ever identified, or was requested to identify, any other person than these four defendants as one of her assailants on this occasion. As above shown, her opportunity to observe each defendant at the time of the occurrences was ample. It is inconceivable that a voir dire examination would have disclosed any basis for objection to her in-court identification of Braxton, or any of the other three defendants, as one of the men who so abducted and raped her.

The defendant Braxton's brief states that this witness "did not identify him in the probable cause hearing," but there is nothing in the record to show that, at the probable cause hearing, she was requested to identify any of the defendants.

Some time after her identification of Braxton and Burden as the men who pulled her from her own car and of McIver as the driver of the car into which she was forced, at the request of Howell's counsel, a voir dire was conducted with reference to the

identification by the prosecutrix of Howell as the fourth man in
the car into which she was forced. On this voir dire no defendant
offered evidence and counsel for neither Braxton, Burden nor
McIver questioned the prosecutrix. This man was sitting on the
passenger side of the front seat and the prosecutrix had testified
before the jury that as she entered the car she did not get a good
look at him. On the voir dire, however, she testified that this man
turned around and she observed his full face as the car was pass-
ing through a small town in which there were street lights and
lights of filling stations. Furthermore, as she testified, the light of
a bright moon prevented the house into which she was taken
from being dark. The moon would, of course, cast light into the
car. In the course of this voir dire the witness testified:

"Q. Did you identify him [Howell] at the District Court hear-
ing [the preliminary hearing]?

"A. I identified all four as the ones. They didn't ask me to
point them out as I recall.

"Q. Could you tell the difference between the four defend-
ants at the District Court?

"A. Of course I could tell the difference between them.

"Q. If you hadn't seen them at the District Court hearing,
would you be able to identify them today?

"A. Yes, I would have.

*     *     *

"Q. You are saying, then, that your testimony today, your
identification today, is based on your observations of
these four defendants on the night of the 10th of
February, 1977, is that correct?

"A. Yes, sir."

Upon the conclusion of that voir dire, the court entered an
order making full findings of fact that the in-court identification
of Howell was based upon the witness' identification of him on the
night of the abduction and rape, and Howell's objection to the
allowance of such testimony as to him was overruled.

Clearly, the evidence thus brought forth upon the voir dire examination, conducted at the request of defendant Howell, removes any possible lingering doubt as to the admissibility of her testimony identifying the defendants Braxton, Burden and McIver.

We find no error in the record which would justify the granting of a new trial to the defendant Braxton. His conviction and the sentence imposed upon him must, therefore, be affirmed.

## APPEAL OF THE DEFENDANT BURDEN

The defendant Burden, like his codefendant Braxton, in his statement of the case on appeal, assigned three errors as follows: (1) The admission of evidence over objection, this being based upon 20 exceptions; (2) the denial of 14 motions made by Burden; and (3) the signing and entry of the judgment.

For the reasons stated in connection with the appeal of the defendant Braxton, Assignment No. 3 is without merit.

Burden, like Braxton, did not bring forward into his brief any of the 20 exceptions upon which his Assignment of Error No. 1 is based. This assignment, and the exceptions upon which it is based, are, therefore, deemed abandoned. We have, however, examined each of these exceptions and the portions of the record pertinent thereto and find no merit in any of them. It would serve no useful purpose to discuss these *seriatim.* We have previously discussed, in connection with the appeal of Braxton, the matter of the admissibility of the in-court identification of Burden by the prosecutrix. No further discussion of Burden's exception thereto is necessary.

While the defendant Burden's Assignment of Error No. 2 is based upon 14 exceptions to the denial of various motions made by him, he has brought forward into his brief on appeal only the matter of the denial of his motion for a separate trial and the denial of his motion to suppress evidence of a statement made by him to one of the investigating officers. The other exceptions upon which this assignment of error was based are, therefore, deemed abandoned. Rule 28 of the Rules of Appellate Procedure, supra. We have, nevertheless, considered these abandoned exceptions and the motions to which they relate and find no merit

therein. Nothing would be gained by a detailed discussion of these.

[4] With reference to Burden's contention that it was error to consolidate the cases for trial, he asserts in his brief that the prosecuting witness was not able to identify him, or any of the other defendants, at the probable cause hearing. As above noted in our discussion of the appeal of Braxton, the record does not substantiate this assertion. Burden contends that the prosecuting witness identified him in court as one of her assailants solely because the cases were consolidated for trial and, consequently, he and his three codefendants were present in the courtroom as the defendants charged with the offenses. For this reason, he says, the consolidation was prejudicial to him. Burden does not contend that he was prejudiced by the admission in evidence of the carefully edited statements made by McIver and Howell to the investigating officers, or that the admission of those statements violated either G.S. 15A-927(c) or the rule of *Bruton v. United States, supra.*

The in-court identification of Burden by the prosecuting witness as one of her assailants was clear and unequivocal. According to her testimony, it was he who first knocked upon the window of her car in the lighted parking lot and, with a pistol pointed at her head, ordered her to roll down the window and then to get out of the car. It was he and Braxton who dragged her from her car, forced her to enter the one driven by McIver and then sat in the back seat of the car with her as they drove from the place of her abduction to the abandoned house where the multiple rapes occurred. On this long ride they traversed the well lighted streets of Fayetteville, went through a smaller town in which there were street lights and lighted filling stations and rode otherwise through bright moonlight. En route to the abandoned house, Burden was pointing the pistol at the head of the prosecutrix until she seized it from him, whereupon they struggled for it as she was firing it. Under these circumstances, it is too great a strain upon credulity to accept his contention that the only basis for in-court identification of him is the fact that he sat at the defendant's counsel table along with the three codefendants.

Furthermore, the prosecuting witness testified that, as she struggled in the car with the defendant Burden for the possession

of the pistol, it fired several times and the defendant Burden exclaimed that she had shot him in the finger. Officer Lovette, who interviewed Burden and obtained a statement from him the following day, testified that one of Burden's fingers had "a wound on it."

Finally, Burden's own statement to Officer Lovette fully corroborates the woman's testimony as to Burden's part in her abduction from the parking lot in Fayetteville, her transportation to the abandoned house in Robeson County, his being wounded when the woman seized the pistol and fired it, and his having had sexual intercourse with her.

Clearly, the identification of Burden as one of the woman's assailants was not brought about by the consolidation of these cases for trial.

[5] Burden next contends that the court erred in denying his motion to suppress the above statement made by him to Officer Lovette. Before this statement was introduced in evidence, the court conducted a voir dire examination in the absence of the jury. Upon it, Officer Lovette and the defendant Burden testified. Burden testified that, at about noon on the day following the alleged rapes, he voluntarily went to the courthouse because he had heard the police were looking for him and there met Officers Lovette and Thompson. He testified that he did not make a statement to Lovette but did make one to Thompson. His mother, father and some friends were with him at the time. He told Officer Thompson that he did not want a lawyer present but did want to make a statement. When shown the statement which the State proposed to offer in evidence and, after the above mentioned editing, did put in evidence, Burden testified that he did not make "that statement." He acknowledged that the officers read to him a statement of his rights and that the signature upon the statement in question looked like his. His testimony was that Officer Lovette and Officer Thompson both read the statement of his rights to him and then Officer Lovette left the room.

Officer Lovette testified on this voir dire that he interviewed Burden and advised him of his constitutional rights pursuant to the *Miranda* formula, whereupon Burden indicated that he understood his rights and wished to make a statement. Officer Lovette testified that he promised Burden nothing and did not

State v. Braxton

threaten him or use any form of coercion to secure a statement from him. He further testified that while the statement was being made by Burden, Officer Thompson and Burden's parents were present. He further testified that Burden made an oral statement of which Officer Lovette made notes and then reduced the statement to writing during the afternoon. He further testified that Burden made another statement to Officer Thompson in the absence of Officer Lovette. This second statement was then reduced to writing and Burden, in the presence of Officer Lovette, acknowledged it as his statement, whereupon Officer Lovette signed the statement as a witness thereto.

At the conclusion of this voir dire, the court made full findings of fact, including a finding that the defendant was advised of his constitutional rights pursuant to the *Miranda* formula, and that the statement made by Burden to Officer Lovette was made knowingly, understandingly and of his own free will without any promise or threat or coercion being used. Thereupon, the court concluded that such statment made by the defendant to Officer Lovette was admissible in evidence.

In his brief, the defendant Burden does not contend that he was not fully advised of his constitutional rights. His contention is that while Officer Lovette prepared the writing signed by Burden as his statement, such writing was "not the complete statements of the defendant but a story put together by the police officer" and, therefore, not admissible as the defendant Burden's own statement. In this contention there is no merit. The written statement, which Officer Lovette testified he compiled from notes made by him of Burden's oral statements, was shown to Burden and, according to the testimony of the officers, signed by Burden. Under these circumstances, it is immaterial that the written statement was not, word for word, identical with the oral statement. No discrepancies were pointed out by Burden in his testimony on the voir dire. We find no error in the admission in evidence of the statement.

Neither Burden's brief nor our own careful examination of the entire record discloses any error prejudicial to him. His conviction and sentence are, therefore, affirmed.

### APPEAL OF THE DEFENDANT McIVER

The defendant McIver, like Braxton and Burden, in his statement of the case on appeal, makes three assignments of error: (1) The court erred in the admission of certain evidence, this being based upon 58 exceptions to various rulings with reference to the admission or exclusion of testimony or exhibits; (2) the court erred in denying certain motions of this defendant, this being based upon exceptions to 13 rulings upon various motions made by McIver; (3) the signing and entry of the judgment.

As above stated, the third assignment of error is purely formal and requires no detailed discussion. The court had jurisdiction and no error appears upon the face of the record proper. Furthermore, this assignment of error is abandoned due to the failure of the defendant to bring it forward in his brief on appeal. Rule 28 of the Rules of Appellate Procedure, *supra.*

Like Braxton and Burden, this defendant has abandoned virtually all of the exceptions to rulings of the court upon the admission of evidence which were cited in his statement of the case on appeal as the basis for his Assignment of Error No. 1, through his failure to bring them forward into his brief on appeal. Rule 28 of the Rules of Appellate Procedure, *supra.* As in the appeals of those defendants, we have, however, examined those exceptions and the portions of the record pertinent thereto and find no merit in any of them. No useful purpose would be served by a discussion of these abandoned exceptions.

[6] In his brief McIver contends that the court erred in admitting, over his objection, irrelevant evidence. He states, correctly, that the test of relevancy of evidence is whether it tends to shed any light on the subject of the inquiry or has as its only effect the exciting of prejudice or sympathy. This Court so stated in *State v. Page*, 215 N.C. 333, 1 S.E. 2d 887 (1939), cited by the defendant, and again in *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. den.*, 384 U.S. 1020 (1966). The defendant lists, as instances of this alleged error, 11 of his exceptions to the rulings of the court on the admission of evidence, but he does not state wherein these portions of the evidence of the State fail to meet the above test of relevance. Our examination of the portions of the records to which these exceptions relate discloses beyond question the relevancy of each such bit of evidence as measured

by the foregoing test. No useful purpose would be served by a detailed recounting of these bits of the evidence.

[7] McIver contends further, in connection with his Assignment of Error No. 1, that the evidence with respect to the activities on this occasion of the other three defendants should not be used to determine the guilt or innocence of the defendant McIver and that the introduction of such evidence at the trial of McIver was error such as to entitle him to a new trial. This contention is utterly without merit so far as the question of the relevancy of such evidence is concerned. The evidence for the State, if true, as the jury obviously found it to be, shows clearly that the four defendants acted in concert throughout in carrying out a common plan to accomplish a common purpose. The uncontradicted evidence of the victim is that each of the four defendants was present, aiding and abetting throughout the entire occurrence, from the abduction in the Fayetteville parking lot to the abandonment of the victim on a lonely road in Robeson County some three hours later. Each was present, aiding and abetting, while each of the other defendants raped the victim. Thus, each would be accountable for such rapes, as principal in the second degree, even if he, himself, had not had sexual intercourse with the victim. *State v. Overman*, 269 N.C. 453, 473, 153 S.E. 2d 44 (1967); *State v. Hairston*, 121 N.C. 579, 28 S.E. 492 (1897); *State v. Dowell*, 106 N.C. 722, 11 S.E. 525 (1890); *State v. Jones*, 83 N.C. 605 (1880). It is upon this theory that these cited cases hold a woman may be convicted of rape and so may the husband of the victim. The entire occurrence from the abduction to the final release of the victim was a unified course of criminal activity, in every part of which each of the four defendants was a participant. Consequently, all of the evidence recounting acts of the several defendants is relevant upon the inquiry as to the guilt of each and was properly admitted unless some other rule of evidence requires its exclusion. There is no merit in McIver's Assignment of Error No. 1.

With reference to his Assignment of Error No. 2, McIver contends that it was error to consolidate for trial his case with the cases of the other three defendants. We have discussed this contention in reference to the appeal of Braxton and no further discussion thereof is required in connection with the appeal of this defendant.

McIver also makes the related contention that, in violation of the rule of *Bruton v. United States, supra,* his right to a fair trial was prejudiced by the admission in evidence, over his objection, of the carefully edited statements made to the investigating officers by Burden and Howell. The statement of neither Burden nor Howell, so edited, implicates McIver in any part of the activities of the declarant related in such statement. Therefore, the admission of such statement in evidence does not violate the Bruton rule.

[8] McIver's contention that it was error to deny his motion for judgment of nonsuit is obviously lacking in merit. The testimony of the prosecuting witness was that McIver was the driver of the car in which she was transported from the point of abduction in the City of Fayetteville to the abandoned house in Robeson County wherein the multiple rapes occurred. Her testimony was that McIver there twice had sexual intercourse with her without her consent. The rule governing the consideration of a motion for judgment of nonsuit is as above stated in connection with the appeal of Braxton. It need not be restated here. There is simply no merit whatever in this contention of McIver.

[9] There is no error in the denial of McIver's motion to suppress the evidence of his own statement to the investigating officer. Before this statement was admitted in evidence the court conducted a voir dire examination in the absence of the jury. McIver did not testify at this voir dire examination. The evidence of the officer was that McIver was taken to the Sheriff's Department at 4:30 a.m., on 11 February 1977 (the night the alleged offense occurred). He made his statement at approximately 11:40 a.m., the same day. After the interviewing officer reduced McIver's oral statement to writing, McIver said that the written statement was correct and signed it. Before the statement was made, the officer advised McIver of his constitutional rights, pursuant to the *Miranda* formula, and McIver signed a written waiver of those rights, including his right to have counsel present during his interrogation. No promises or threats were made to McIver in order to procure his statement. The court found the facts to be as the officer so testified. We find no error in the denial of McIver's motion to suppress evidence as to the statement so given by him.

The defendant McIver's motions to set aside the verdict as contrary to the weight of the evidence and for the granting of a new trial for unspecified errors were directed to the discretion of the trial court and its rulings thereon are not reviewable in the absence of an abuse of discretion, which does not appear in this case. *State v. Manuel,* 291 N.C. 705, 231 S.E. 2d 588 (1977); *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960).

[10]    McIver's motion to suppress evidence found in the car by investigating officers has no merit. The registered owner of the automobile was McIver's mother. The court conducted a voir dire examination and found that she consented to this search of the automobile by the officers, having consented to their taking it from the yard of her home, where the officers found it, to the courthouse. Evidence on the voir dire supports this finding and it is, therefore, conclusive. *State v. Fox,* 277 N.C. 1, 24, 175 S.E. 2d 561 (1970); *State v. Gray,* 268 N.C. 69, 79, 150 S.E. 2d 1 (1966), *cert. den.,* 386 U.S. 911 (1967).

Neither the brief of McIver, nor our careful search of the entire record, reveals any error entitling McIver to a new trial. His conviction and the sentence imposed upon him will, therefore, not be disturbed.

## APPEAL OF THE DEFENDANT HOWELL

The defendant Howell first assigns as error the failure of the trial court to sustain his objections to four alleged leading questions by the District Attorney. The fourth of these questions was not leading since it did not suggest the answer desired. The other three questions were obliquely leading but two of them related to introductory matter and the remaining question dealt with the relatively trivial matter of the time when the pistol was fired by Braxton in the room of the abandoned house wherein the witness was allegedly raped by each of the defendants. We observe no possible prejudice to this defendant resulting from the form of these questions. It is elementary that counsel should not ask his own witness leading questions on direct examination but is equally well established that the allowance of such questions is within the sound discretion of the trial judge. *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). This assignment of error is without merit.

The defendant Howell next assigns as error the overruling of his objections to certain evidence on the ground that such evidence was repetitious. The bits of testimony to which these exceptions are directed were trivial and the defendant was not prejudiced thereby even if this were not a matter in the discretion of the trial judge, which it is.

The defendant Howell's next assignment of error relates to nine other miscellaneous rulings of the court overruling objections by this defendant to evidence introduced by the State and to one alleged expression of opinion by the court concerning a hole in the floor of the house, which the investigating officer testified was, in his opinion, caused by a bullet. These various rulings are simply stated in the brief without any argument or authority cited in support of the defendant's position concerning them. The record indicates that the alleged expression of opinion by the court was not a statement by the court at all but a continuation of the testimony of the State's witness. The several rulings of the court to which this assignment relates were clearly correct and no useful purpose would be served by discussing them in detail.

The defendant Howell's Assignment of Error No. 3 is that the court erred in not instructing the jury that two specified portions of the State's evidence did not apply to the defendant Howell. The first such portion of the testimony was in response to the District Attorney's question to the victim of the assaults as to what the four defendants were doing while the victim was firing, within the car, five shots from the pistol which she had seized from the defendant Burden. In overruling the objection of this defendant's counsel to that question, the judge directed the witness to be specific as to which defendant was doing what. Her reply was, "All four of the men in the car had started yelling at each other," which, under the circumstances, was, to say the least, quite plausible testimony. The witness then stated that Braxton, McIver and the third man, subsequently identified by her as Howell, were yelling at Burden and asking him why he gave her the gun. She testified that Burden's response was that he did not give it to her; she took it and had shot him in the finger. Thereupon, she testified, Burden retook the gun from her and Braxton took it from him and reloaded it. This bit of evidence clearly related to all of the defendants. The other portion of the

evidence to which this assignment relates was the testimony of the State's witness Clawson, the barber, that he shaved all the hair from Braxton's head the morning after the offenses are alleged to have occurred. It was not necessary for the court to instruct the jury that this testimony did not relate to the defendant Howell. The trial court was entitled to assume that the jury had sufficient intelligence to know that without being so instructed. There is no merit whatever in this assignment of error.

Howell's Assignment of Error No. 5A relates to the ruling of the trial court concerning certain items found by the investigating officer in the McIver automobile while the automobile was still in the yard of the McIver residence. On voir dire examination, there was a direct conflict between the testimony of the investigating officer and the testimony of McIver's brother and mother as to whether the mother, who was the registered owner of the car, then gave the officer permission to search the car. The court ruled that such consent had not been shown by the State and, therefore, ruled that the items then taken from the car were not admissible as against McIver but were competent evidence as against the other defendants because they had no standing to object to the search of the car. In his brief the defendant Howell concedes that he did not have standing to object to that search of the automobile. We find no error in this ruling of the trial court prejudicial to the defendant Howell.

[11] This assignment of error also includes the court's admission of testimony of the investigating officer who searched the car after it was removed to the Sheriff's office with the consent of McIver's mother, the registered owner of the car. This was not the same officer who had removed certain articles from the car while it was in the McIver yard. The testimony of this second investigating officer was that in his search of the car at the Sheriff's office, which the court found to have been with the consent of the registered owner, he found in the inside rear of the car bloodstains and a hole in the side panel and, adjacent thereto, an indentation of a bullet which had not penetrated entirely through the panel. The defendant Howell now contends that his motion to strike this testimony should have been allowed because this was "pure conjecture" on the part of the officer. The testimony tended to corroborate that of the prosecutrix with reference to the firing of the pistol within the car. Obviously, the

witness, a detective on the Sheriff's staff with 35 years experience in law enforcement and military service, would be competent to express an opinion as to the cause of the damage to this interior panel of the automobile. The record does not indicate any statement by this defendant, or any of his codefendants, as to the basis of the objection to the testimony or any indication of a desire by them to inquire into the qualifications of the witness. Furthermore, the testimony in question was not given before the jury but in its absence during the course of a voir dire examination. We find no merit in this exception.

[9] Defendant Howell's Assignment of Error No. 5E is to the failure of the court to grant his motion to suppress the evidence of his own statement to the investigating officer. In this assignment also there is no merit. In one of the numerous voir dire examinations conducted throughout this trial, prior to the court's ruling upon Howell's motion to suppress evidence of this statement, the officer, who interviewed Howell and who took the statement from him, testified that he, prior to questioning him, advised Howell as to his constitutional rights pursuant to the full *Miranda* formula. This officer further testified that Howell was then awake and alert and indicated that he fully understood these rights, that no promise or inducement was made him in order to obtain the statement and no coercion whatever was exerted upon him to persuade him to make it. According to this officer's testimony on the voir dire examination, this advice as to his rights was given to Howell just moments prior to the interview in which Howell's statement was made, this being at approximately 11:40 a.m., following Howell's arrest at approximately 5 a.m., which, in turn, was some four or five hours after the alleged offenses.

Howell testified on this voir dire to the effect that he was not advised of any of his constitutional rights, either by the arresting officer or the one who interviewed him, saying: "No, he didn't read no rights to me. Ain't no Sheriff or no detective read rights to me. Ain't nobody read any of them to me." He further testified that while he did make a statement to the officer, it was not the one offered in evidence by the State. He acknowledged that he signed the paper purporting to be his statement but said the officer would not let him see it and did not read it to him. He also acknowledged that at the time of his arrest he signed a paper

purporting to be a waiver of his constitutional rights, but said he did not read it and simply signed it as he was directed by the officer to do. He went to the Eleventh Grade in school and said he could write a little but could not read well.

At the conclusion of this voir dire, the court entered an order containing findings of fact, in accordance with the testimony of the officers, that when Howell was first arrested at approximately 5 a.m., he was advised of his rights by the arresting officer and signed a waiver thereof, that at approximately 11:40 a.m., he was again advised of his rights by and made a statement to the interviewing officer, no promise or threat having been made and no coercion having been exercised upon him. Upon these findings, the court concluded that all of his constitutional rights were properly related to Howell, that Howell signed the waiver of rights understandingly and made the statement to the officer voluntarily and understandingly. The court thereupon denied the motion to suppress evidence of the statement.

Prior to the introduction of Howell's statement in evidence before the jury, another voir dire was conducted with reference to events at the time of his arrest, which was approximately 5 a.m., some six and a half hours prior to the making of the statement. On this second voir dire, a police officer testified: He was one of three officers who went to the McIver home in search of the McIver automobile; when McIver subsequently arrived at the residence, he took the officers to Howell's residence, advising them that he had been with Howell all night; at the request of the officers, Howell then accompanied the officers and McIver to the McIver residence. Howell was not then under arrest and was so advised; he, McIver and the officers then went, in the officers' car, to the Sheriff's office where detectives talked with Howell and McIver separately.

The officer in whose car Howell rode from his own residence to that of McIver, and thence to the Sheriff's office, testified on this second voir dire that he "advised him of his rights when he got into my car," this being "the thing that we usually do to anyone that we are questioning or talking with."

On this second voir dire, Howell also testified. He again denied that the above mentioned officer advised him of any rights

and said he first refused to go to the Sheriff's office but then went at the insistence of the officers.

Thereupon, Officer Thompson, a member of the Sheriff's staff, testified on this second voir dire: He first saw Howell in a room by himself at the Sheriff's office about 4:30 a.m., then knowing Howell was a suspect in this case; he then went into the room where Howell was and read him his rights from a form sheet and explained those rights to him; Howell then signed a waiver of those rights and thereafter Officer Thompson asked Howell if he knew anything about the rape case; Howell stated that he did not know anything about it. Subsequently, Officer Thompson procured a warrant for Howell's arrest and arrested him.

At the conclusion of this second voir dire, the court again denied Howell's motion to suppress the evidence of his statement and permitted an edited version thereof to be read to the jury, the editing having been done by the court and all counsel so as to delete from the original statement, as written by the interviewing officer, any references therein to the other three defendants in order to comply with the rule laid down in *Bruton v. United States*, supra.

The findings of the court upon the said voir dire examinations, being supported by evidence, are conclusive. *State v. Fox*, *supra; State v. Gray*, *supra.* They establish that the statement by Howell was made freely and voluntarily, was not induced by threats or promises and was made after he had been fully advised of and understood his constitutional rights as set forth in the Miranda formula.

[12]  The defendant Howell next contends that the edited statement introduced in evidence before the jury was not the statement actually made by Howell. Obviously, it was not the complete statement as originally signed by Howell for, in order to comply with the rule of *Bruton v. United States, supra,* certain references in the original statement to the other defendants had been deleted. This editing made the statement somewhat incoherent, but a comparison of the original statement with the edited copy fails to show any prejudice to Howell resulting from the editing. Howell, in his brief, concedes that the edited statement "complies with the dictates of *Bruton v. United States,*" *supra.* His contention that the use of his statement so edited

deprived him of his right of confrontation and of due process of law is completely baseless. As against him, the entire statement was admissible. The edited statement was no more prejudicial to him that would have been the entire original statement, nor did the editing distort the meaning of the statement as to him. There is no merit in this assignment of error.

Prior to trial, the defendant filed a motion for discovery pursuant to G.S. 15A-902(a). An order of discovery was entered by the court directing in full the discovery sought in the defendant's motion. The defendant now contends that the court erred in admitting evidence of which the defendant had not been advised, pursuant to the said discovery order. This consisted of the following:

(1) A photograph of the defendant Howell, himself, which a witness, one of the investigating officers, testified correctly portrayed his appearance when that officer observed him at the Sheriff's office the night the offense occurred. At the time this was introduced in evidence, the defendant Howell objected without any statement of reason for his objection and made no reference to his motion for discovery.

(2) The testimony of the physician who examined the prosecutrix following the alleged assaults. When this witness was called to the stand, the defendant Howell objected to his being allowed to testify, for the reason that he had asked for a copy of the physician's report in the discovery motion and the District Attorney had then stated he did not have such report in his possession. In response, the District Attorney informed the court that he still did not have a medical report and, furthermore, such report would, in his opinion, be privileged as between the physician and his patient.

(3) The admission in evidence of partially burned articles found by investigating officers in or near the house where the rapes are alleged to have occurred and identified by the prosecutrix as portions of her clothing and other personal articles. To the introduction of this evidence, the defendants objected on the ground that, with reference to these articles, the order of discovery had not been obeyed. The court conducted an extensive voir dire and concluded that, as to these articles, the State had

complied with the order of the court and the provisions of the discovery statute.

(4) The entire testimony of the prosecutrix. The basis for this objection to this evidence was that the order for discovery directed the State to disclose all aliases by which the prosecutrix had been known. The District Attorney replied at that time that he did not know of any such aliases. The defendant Howell contends that the maiden name of the prosecutrix should have been disclosed. The court ruled that the District Attorney had complied with the discovery order.

[13, 14] There is no merit whatever in this contention by the defendant Howell. Obviously, a married woman's maiden name is not an alias. Furthermore, G.S. 15A-910 provides that the court "may" forbid the introduction of evidence not disclosed to the adversary in accordance with a discovery order. Thus, the admission or exclusion of such evidence is left in the discretion of the trial court. *State v. Thomas*, 291 N.C. 687, 231 S.E. 2d 585 (1977). There was no abuse of discretion in the court's ruling and there is no merit in this assignment of error.

[2] The defendant Howell's next assignment of error is that the court abused its discretion in finding that the identification of Howell by the prosecutrix was of independent origin. We have previously discussed the admissibility of the witness' identification of the defendants in connection with the appeal of Braxton. No further detailed discussion of this matter is required in connection with the appeal of Howell. With reference to the identification of the defendant Howell, the court conducted a voir dire examination in the absence of the jury, the evidence at which clearly disclosed ample opportunity of the prosecutrix to see and remember the appearance of Howell during her long ride in the car with him from the point of abduction to the point of her release on the lonely road in Robeson County. It was a bright moonlight night and, in the course of the ride, they passed through a small town with street lights and lighted filling stations. At that time, Howell turned around from his position in the front seat beside the driver and the prosecutrix saw his full face. The house in which the multiple rapes occurred was not dark because of the bright moonlight. Both there and at the time when he, according to her testimony, raped her in the automobile, she

State v. Braxton

was obviously in close proximity to him long enough for her to observe and remember his appearance. There is no merit in this assignment of error.

The defendant's motion for judgment of nonsuit was properly overruled, for reasons heretofore discussed in connection with the appeal of the defendant Braxton. His motions to set aside the verdict as being against the weight of the evidence and for a new trial were, as heretofore stated, addressed to the discretion of the trial court and, in the denial thereof, there was no error. His motion for arrest of judgment was properly denied, there being no defect appearing upon the face of the record proper. For the same reason, his exception to the signing and entry of the judgment requires no discussion.

This defendant, like his codefendants, has had a fair trial in accordance with the law of this State. His conviction and sentence will not be disturbed.

As we said in *State v. Overman*, 269 N.C. at 470, "Contributory negligence by the victim is no bar to prosecution by the State for the crime of rape," so the prosecutrix' going alone in the evening to the part of the City of Fayetteville where she was abducted does not affect the validity of the judgment here entered.

As to the Defendant Braxton: No error.

As to the Defendant Burden: No error.

As to the Defendant Howell: No error.

As to the Defendant McIver: No error.