STATE OF NORTH CAROLINA v. WAYNE DARNELL BUMPER

No. 31

(Filed 19 November 1969)

1. **Criminal Law § 88; Constitutional Law § 31— right of cross-examination — impeachment — restriction on repetitious questions**

   Where defendant's cross-examination of the prosecuting witness for impeachment purposes repeatedly elicited the answer that the witness had testified in a former trial that he believed the defendant was holding card number six in a police identification lineup, action of the trial court in precluding further examination on this point did not deprive defendant of his right of cross-examination, the court having the right to restrict repetitious and argumentative inquiry.

2. **Constitutional Law § 31— right of cross-examination — common law — constitutional guarantees**

   The right of cross-examination is a common law right and is guaranteed by the N. C. Constitution, Art. I, § 11, and also by the Sixth Amendment to the U. S. Constitution, which is made applicable to the states by the Fourteenth Amendment.

3. **Constitutional Law § 31; Criminal Law § 88— right of cross-examination — common law rule**

   The right to confront affirms the common law rule that in criminal trials by jury the witness must be present and subject to cross-examination under oath.

4. **Criminal Law § 88— cross-examination on the examination-in-chief**

   The defendant is entitled to a full and fair cross-examination upon the subject of the witness' examination-in-chief, and this is an absolute right rather than a privilege.

5. **Criminal Law § 88— cross-examination — impeachment — repetitious questions — restrictions**

   When cross-examination is made for the purpose of impeaching the credibility of a witness, the method and duration of the cross-examination for this purpose rest largely in the discretion of the trial court, which may properly exclude such cross-examination when it becomes merely repetitious or argumentative.

6. **Constitutional Law § 1— power of states to make rules of evidence — U. S. Supreme Court**

   The United States Supreme Court will not encroach upon the powers of

the states to make their own rules of evidence in their own courts as long as they serve a legitimate state purpose not prohibited by the U. S. Constitution.

**7. Constitutional Law § 31— cross-examination — impeachment — repetitious questions — discretion of trial court**

The rule allowing the trial judge to exercise his discretion to limit cross-examination for the purpose of impeachment when it becomes repetitious or argumentative does not violate any provision of the U. S. Constitution, it appearing that the rule is for a legitimate and fair state purpose and does not contravene due process.

APPEAL by defendant from *Bowman, S.J.,* January 1969 Criminal Session of ALAMANCE County Superior Court.

Defendant, Wayne Darnell Bumper, was heretofore tried for the rape of Loretta Nelson and for the felonious assault of Loretta Nelson and Monty Jones. He was found guilty on all counts, was sentenced to life on the rape charge upon recommendation of the trial jury, and was sentenced to consecutive terms of ten years on each of the felonious assault charges. He appealed to the North Carolina Supreme Court, which found no error in the trial below. *State v. Bumpers,* 270 N.C. 521, 155 S.E. 2d 173. On certiorari, the United States Supreme Court reversed the North Carolina Supreme Court and remanded for further proceedings, holding that defendant's constitutional rights were violated at his trial by the introduction of evidence obtained by an unlawful search and seizure. *Bumper v. North Carolina,* 391 U.S. 543, 20 L. ed. 2d 797.

At the January 1969 Criminal Session of Alamance, Wayne Darnell Bumper was charged in three bills of indictment with: (1) felonious assault of one Monty Jones with a 22 rifle with intent to kill; (2) felonious assault of one Loretta Nelson with a 22 rifle with intent to kill; and (3) armed robbery of Monty Jones and Loretta Nelson. These indictments were consolidated for trial and defendant was tried at the January 1969 Criminal Session of Alamance. The jury returned verdicts of guilty as to each charge, and from judgments of imprisonment for terms of not less than twenty nor more than thirty years (for armed robbery), not less than nine nor more than ten years (for felonious assault), and not less than nine nor more than ten years (for felonious assault), the three sentences to run consecutively, defendant appealed to the North Carolina Court of Appeals. The Court of Appeals found no error in the trial below. Defendant appeals to this Court pursuant to G.S. 7A-30(1).

We deem it unnecessary to recite lengthy facts, since all facts pertinent to this appeal center on testimony concerning the identi-

fication of defendant at two line-ups held at Alamance County jail on 16 August 1966. A full and accurate statement of the facts may be found in the opinion of the North Carolina Court of Appeals reported at 5 N.C. App. 528.

The State offered evidence which tended to show that defendant at secluded spots in Alamance County raped Loretta Nelson twice, robbed both Loretta Nelson and Monty Jones, and shot both of them while they were bound to trees. Prior to the line-ups and while confined in separate hospitals, Loretta Nelson and Monty Jones had each identified a photograph of Wayne Darnell Bumper as the person who assaulted and robbed them.

Two line-ups were conducted, in which defendant appeared with nine other Negro males. At the first line-up defendant held a card bearing the number 7, and in the second line-up he held a card bearing the number 2. The attorney then representing Wayne Darnell Bumper was present at the line-ups.

Loretta Nelson, among other things, testified that at the first line-up she was afraid to look at the men but that she saw a card with No. 6 on it. "As to whether I told the Sheriff and other officers I identified the person who attacked me and Mr. Jones on July 31st as No. 6, no, sir, I said No. 6. I don't remember how he asked, he asked something and I said No. 6." At the second line-up she recognized defendant Bumper as her assailant and gave this information to Sheriff Stockard.

The testimony of Monty Jones was, in substance, the same as that of Loretta Nelson concerning the events of 31 July 1966. His testimony concerning the line-ups will be hereinafter considered.

John H. Stockard, Sheriff of Alamance County, testified concerning the line-ups and stated that when Loretta Nelson made her first identification he believed that she had given him the number 6. The Sheriff then testified that he sent Monty Jones in to view the line-up and that "At that time while I talked to her (Loretta Nelson) we had Mr. Jones go in by himself. We gave him the same instructions to walk by, look at the individuals and come back and tell me if he recognized anyone and what number it was. He came back and reported to me that it was No. 7, I believe."

On redirect examination the Sheriff stated that the reason for the second line-up was that Loretta Nelson had told him that she did not look at the faces of the men in the first line-up.

Defendant took the stand in his own behalf and testified that he had been in the general area in question on the night of 31 July

1966, but that he had not attacked or robbed the complaining witnesses Monty Jones or Loretta Nelson. He offered other evidence in the nature of an alibi.

*Attorney General Morgan and Trial Attorney Eugene A. Smith for the State.*

*Clarence Ross for defendant.*

BRANCH, J.

[1]   The sole question for decision is whether the trial court erred in restricting defendant's cross-examination of State's witness, Monty Jones, on the question of his identification of defendant in the lineups held on 16 August 1966.

Monty Jones stated on direct examination that he went into a room at the jail on two separate occasions and on each occasion he observed ten or fifteen colored men standing in line. On each occasion he went back and told Sheriff Stockard the number being held by the man who attacked him.

On cross-examination he testified:

"Yes, sir, I looked at each and every face the first time of the men in the line-up. Yes, sir, that included everyone in the line-up. Yes sir, after I looked at each one of the men, *I came back to the Sheriff and said I believed it was 6.;* it was the right one. I forgot the number I told him the first time. *No, sir, I didn't tell him No. 6. I said I believed No. 6. I said I believed No. 6,* but I got the right one in the line-up. I got the numbers mixed up. I got the numbers mixed up when I got in court. When I was at the line-up I got the right number, when up here I got the numbers mixed up. *When I testified at a previous hearing I said I believed No. 6.*

"Q.   Were you asked the question at the trial: You recall what number he was carrying and you answered No. 6?"

Before Jones could answer, Mr. Cooper, the District Solicitor, asked the Judge to remove the jury. The jury was sent to the juryroom and Mr. Cooper, Mr. Dodge (defendant's attorney) and the Court engaged in the following colloquy:

"MR. COOPER:   Mr. Dodge is purporting to read from a transcript of this boy's testimony, he deliberately left out a word.

THE COURT:   What word?

MR. COOPER:   I believe.

MR. DODGE:  Page 7 I am reading from.

THE COURT:  Is that on Page 7, Mr. Cooper?

MR. DODGE:  11 and 12. This is cross examination, I wasn't deliberately omitting anything.

THE COURT:  Let's don't pursue that particular line of question any further about the number 6.

MR. DODGE:  Except to the ruling of the Court."

The jury returned to the courtroom and no further mention was made of whether Monty Jones had testified on the first trial that he *believed* that his attacker was No. 6 or that his attacker *was* No. 6.

At the time defendant's attorney elicited the above quoted evidence, he was conducting his cross-examination by use of a transcript of the former trial. We note that, although defendant offered evidence, he did not favor the jury with the introduction of the transcript which would have shown with great finality and credence the statements made by the witness Jones at the first trial.

[2, 3]  The right of cross-examination is a common law right and is guaranteed by the North Carolina Constitution, Article I, Sec. 11. The right to confront affirms the common law rule that in criminal trials by jury the witness must be present and subject to cross-examination under oath. *State v. Perry,* 210 N.C. 796, 188 S.E. 639; *State v. Breece,* 206 N.C. 92, 173 S.E. 9; *State v. Hightower,* 187 N.C. 300, 121 S.E. 616. The right to confront witnesses and cross-examine is also guaranteed by the Sixth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 13 L. ed. 2d 923; *State v. Jackson,* 270 N.C. 773, 155 S.E. 2d 236.

[4, 5]  The defendant is entitled to a full and fair cross-examination upon the subject of the witness' examination-in-chief, and this is an absolute right rather than a privilege. *Resurrection Gold Min. Co. v. Fortune Gold Min. Co.,* 129 Fed. 668; *State v. Hightower, supra.* However, when cross-examination is made for the purpose of impeaching the credibility of a witness, the method and duration of the cross-examination for these purposes rest largely in the discretion of the trial court, and the trial court may properly exclude such cross-examination when it becomes merely repetitious or argumentative. *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340; *McCorkle v. Beatty,* 226 N.C. 338, 38 S.E. 2d 102; *State v. Wall,* 218 N.C. 566, 11 S.E. 2d 880; *State v. Beal,* 199 N.C. 278, 154 S.E. 604.

**[6, 7]** The United States Supreme Court will not encroach upon the powers of the states to make their own rules of evidence in their own courts as long as they serve a legitimate state purpose not prohibited by the provisions of the United States Constitution. *Spencer v. Texas,* 385 U.S. 554, 17 L. ed. 2d 606. The rule allowing the trial judge to exercise his discretion to limit cross-examination for the purpose of impeachment when it becomes repetitious or argumentative does not violate any provision of the United States Constitution. We would quickly destroy the orderly administration of justice in our courts should the trial judge be forced to allow counsel to cross-examine on such matters ad infinitum. It is obvious that the rule is for a legitimate and fair state purpose and does not contravene due process.

**[1]** Here, the real question before the jury was the identity of the assailant and not the number on the card held by defendant. The witness had testified as to the identity of his assailant. Therefore the question asked by defendant's attorney and upon which he bases his assignment of error was clearly for the purpose of impeachment by showing prior statements inconsistent with his testimony. An examination of the record shows that Monty Jones had responded to a battery of questions concerning his testimony at the first trial as related to his identification of defendant in the police line-ups. The witness had several times substantially answered the question propounded, and it therefore became a repetitious inquiry calculated to bring out matter already testified to by the witness.

We find no abuse of discretion on the part of the trial judge in halting the repetitious and argumentative questions which sought to impeach the witness Monty Jones.

The decision of the Court of Appeals is

Affirmed.