STATE OF NORTH CAROLINA v. ROBERT GRADY BOYKIN

No. 62

(Filed 4 December 1979)

1. **Criminal Law § 74— admissibility of written summarization of confession**
    It is not required by law that the statement or confession of an accused be in his own handwriting or that the person taking the statement repeat the exact words of the accused, but a summary statement of an accused reduced to writing by another person is admissible against the accused where it was freely and voluntarily made and was read to or by the accused and signed or otherwise admitted by him as correct. Therefore, an officer's written summarization of defendant's statement to him was admissible in evidence where defendant adopted the statement as his own by reading it, circling a minor incorrect portion, and initialing it.

2. **Constitutional Law § 28— inconsistencies in testimony at trial and preliminary hearing—no knowing use of false testimony by State**
    The State did not knowingly use false testimony in violation of defendant's right to due process by presenting a witness whose trial testimony was inconsistent in non-substantive respects with his testimony at the preliminary hearing.

3. **Constitutional Law § 70; Criminal Law § 88.1— cross-examination of rebuttal witness—no denial of right of confrontation**

Defendant's constitutional right of confrontation was not violated when the court limited defendant's cross-examination of the State's rebuttal witness to evidence presented in the rebuttal testimony and refused to permit defendant to cross-examine the witness further about his earlier testimony where defense counsel extensively cross-examined and recross-examined the witness when he earlier testified for the State, and defendant reserved the right to recall the witness but failed to do so.

4. **Criminal Law §§ 75.9, 76.2— volunteered statements—finding of voluntariness unnecessary—subsequent voir dire**

An officer's testimony as to incriminating statements made to him by defendant when he went to defendant's home in response to a telephone call from defendant was properly admitted by the trial court without making a finding as to the voluntariness of the statements where defendant was under no pressure of any kind, volunteered the statements to the officer, and was not subjected to an in-custody interrogation. Furthermore, any error in the admission of the statements without a voir dire hearing to determine their voluntariness was cured when the court thereafter held such a hearing at the time of the officer's rebuttal testimony and found upon supporting evidence that the statements were made knowingly and voluntarily without any threat or promise.

5. **Criminal Law § 93— rebuttal testimony—new evidence**

The trial court did not abuse its discretion in permitting new evidence to be introduced in the State's rebuttal testimony.

6. **Criminal Law § 88.1— exclusion of questions on cross-examination**

The trial court did not err in sustaining objections to defendant's cross-examination of two witnesses where the questions to which objections were sustained went beyond the scope allowable for cross-examination of a rebuttal witness, called for hearsay answers or were repetitious, called for answers already in evidence, or were irrelevant.

7. **Criminal Law § 100— private prosecution in capital case**

There is no merit in defendant's contention that private prosecution should not be permitted in a first degree murder case because the private prosecutor is hired by the decedent's family to seek the death penalty rather than to see that justice is done.

8. **Criminal Law § 100— private prosecutor—potential witness for defense**

The trial court in a murder case did not abuse its discretion in permitting private prosecution by an attorney who defendant contended was potentially a material witness for defendant where the attorney was not subpoenaed by defendant until 4:30 p.m. on Friday afternoon before the trial on Tuesday; at no time, before or after defendant's motion to prohibit private prosecution, did defendant indicate that he really intended to call the attorney as a witness; counsel for defendant at no time discussed with the attorney what he wanted to know or requested a voir dire for that purpose; the attorney stated that he was willing to withdraw as private prosecutor if he were assured that he

would be called as a witness; and the attorney was not in fact called upon to testify for the defendant.

**9. Criminal Law § 135.3; Jury § 7.11— bifurcated trial in capital case—exclusion of jurors for capital punishment beliefs**

The trial court can properly excuse jurors for cause on the basis of their capital punishment beliefs in a bifurcated trial in a capital case.

**10. Criminal Law § 132— motion to set aside verdict—discretion of court**

A motion to set aside the verdict as being contrary to the greater weight of the evidence is addressed to the discretion of the trial judge and is not reviewable on appeal in the absence of abuse of that discretion.

DEFENDANT appeals from judgment of *Brown, Judge,* at the 2 January 1979 Criminal Session of NASH County Superior Court.

Defendant was charged in separate indictments, proper in form, with the murders of Julius Randolph Murray, Jr. and John Gregory Stone on 22 August 1978. He entered pleas of not guilty and was found guilty by a jury of second degree murder of Murray and voluntary manslaughter of Stone. For the conviction of second degree murder, defendant was sentenced to prison for the term of his natural life. For the conviction of voluntary manslaughter, he was sentenced to 10 years imprisonment to begin at the expiration of the life sentence. Defendant appealed his life sentence directly to this Court as a matter of right pursuant to G.S. 7A-27(a). We allowed defendant's motion to bypass the Court of Appeals on the voluntary manslaughter conviction pursuant to G.S. 7A-31(a) on 3 July 1979.

## EVIDENCE FOR THE STATE

Evidence for the State tended to show that defendant and decedents Stone and Murray were riding together in Murray's car on 22 August 1978. They stopped to get beer at a gas station in Middlesex at approximately 4:30 p.m. and were later seen parked off State Highway 264 near some railroad tracks in Nash County around 5:15 p.m. Residents of the area reported hearing several shots fired from the vicinity of the car soon after.

Sometime later, Ralph Edwards, a farmer, reported that he drove by the area and saw decedent Murray lying on the hood of a car and decedent Stone, face down, stretched out beside the car on the left-hand side. Edwards did not stop but drove on to get help. A little beyond the car, he picked up the defendant and

asked him what had happened. Defendant replied, "Well both the damned son-of-bitches been beating on my head and [I] hope both of them were dead." Edwards took defendant home, noticing that defendant did not have any cuts, bruises or bleeding about his body. Edwards did not see a gun on defendant.

At approximately 5:30 p.m. that same day, Nash County Deputy Sheriff Glen Driver received a call from defendant, an acquaintance. Defendant told Driver that he was at home but that he had just shot Murray and Stone. After advising defendant to remain where he was, Driver proceeded to the crime scene and found Murray dead and Stone dying. He also found two spent .25 cartridges near Stone.

Driver went on to the defendant's residence. There, the deputy testified, "Grady [defendant Robert Grady Boykin] wanted to tell me what occurred at the scene of the shooting. I told [him] that he didn't have to tell me anything. [He] stated to me that he knew his rights and he wanted to tell about it anyway." Defendant told the deputy that he had shot the decedents with a Colt .25. When Deputy Driver told defendant that Murray was dead and Stone was dying, defendant replied, "I hope so." Driver took defendant to the Nash County Sheriff's Office.

Lieutenant Milton Reams of the Nash County Sheriff's Department read defendant his rights at 7:10 p.m. Defendant stated he understood them and initialed a rights waiver. However, defendant refused to let Reams write as defendant spoke, so Reams transcribed what he remembered of the account after defendant finished speaking. Defendant read the written statement, circled one part that was incorrect, and signed it.

The gist of the statement was that defendant and decedents Murray and Stone had had some recent trouble between them. Murray and Stone had shot up defendant's business and new truck, but were negotiating restitution. All three had been together that day pricing new trucks for decedents to buy for defendant. They returned, changed cars and drank. Defendant drove decedent Murray's car. After they purchased beer at the Middlesex gas station at about 4:30 p.m., they went to Rural Paved Road 1118 beside the railroad tracks, drank and talked. At one point Stone told defendant, "I could have your arm broke for $100.00." Defendant replied, "Well, why don't you have both of

them broke for $175.00 and get a discount?" Defendant also stated that Stone said he could rape defendant's daughter. Defendant said the rape statement "turned him on," that Stone then winked at Murray and Murray "lunged" at the defendant. Defendant took his weapon and fired twice at Murray and Stone.

In the course of giving this statement, defendant told Deputy Reams, "Reams, you know I'm a good shot. I did not have to shoot them in the head like that. I could have shot them in the leg, or something like that . . . I meant to kill them two son-of-bitches and that's what I did." Reams asked defendant if the decedents had hurt him in any way and defendant replied no.

Medical testimony established that each of the decedents had been shot twice, with the lethal shot in each case being a wound to the back of the head. The bullets taken from Stone's head were fired from defendant's .25 caliber pistol.

The State rested and the defendant moved to dismiss the charge of murder in the first degree. The motion was denied.

## EVIDENCE FOR THE DEFENDANT

Evidence for the defendant traced the trouble between defendant and decedents back to 20 July 1978. On that date, defendant and decedents were involved in a fight at defendant's place of business, a bar and poolroom, and defendant forbade decedents to come to his place again. Two witnesses testified they subsequently heard decedents say that they were going to shoot or "mess up" defendant. Defendant was told of these threats. Over a week later, on 28 July 1978, decedents shot defendant's new truck 31 times using .30-06 and .22 caliber rifles. Defendant swore out a warrant for their arrest, but a district court hearing was continued twice while the parties negotiated private restitution.

Defendant testified on his own behalf as to the events on the day of the killings. The three had been drinking for some time when they got to the railroad tracks. Once there, an argument ensued and decedent Stone stated that he was going to go back and shoot defendant's truck again. Stone also said he was going to rape defendant's daughter. Decedents told defendant that they were going to break his leg for $100.00. Decedent Murray "jumped" defendant while decedent Stone had his hands in his

pockets. Defendant was shoving Murray off and Stone was coming toward him so defendant fired at Murray, got loose from him and turned to face Stone. Defendant testified,

> I thought at the time I fired the gun twice. Murray just went away. I don't know if Greg [Stone] heard the gun fire or saw me turn but just as I turned, he turned his head. I thought I fired the gun twice at Stone. I did not aim the gun. I just fired at what I saw. At the time they were jumping me, I thought they were going to kill me. I was very afraid.

Both the State and defendant presented rebuttal evidence.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Joan H. Byers for the State.*

*Thomas W. Henson for the defendant.*

CARLTON, Justice.

The record discloses that the trial of this criminal action began on Wednesday, 3 January 1979, and lasted through Saturday, 20 January 1979. The record presented by this appeal is 367 pages in length and does not include the judge's charge to the jury or argument of counsel. Defendant has grouped 216 exceptions into 49 assignments of error. In his 92-page brief, defendant brings forward 38 assignments of error under 14 "questions presented." The remaining assignments of error are deemed abandoned, North Carolina Rules of Appellate Procedure, Rule 28. We find no merit in any of defendant's assignments of error and affirm the trial court.

[1] Defendant first assigns as error the admission into evidence of the in-custody statement and written confession he gave to Deputy Reams at the Nash County Sheriff's Office. Defendant relies on our decision in *State v. Walker,* 269 N.C. 135, 152 S.E. 2d 133 (1967). There, this Court held that where the evidence established that a confession signed by the defendant was not read to or by him, admission of the confession constituted prejudicial error. The written statement in *Walker,* as here, was summarized by the officer and was not a verbatim recitation of defendant's account. *Walker,* however, is distinguishable from the case at bar. Here, the evidence clearly establishes that Deputy Reams handed the statement to the defendant who read it after

Reams had prepared it. At the time, Reams also asked the defendant to initial anything incorrect in the written account so that it could be changed. Defendant circled one part which he indicated was incorrect but then indicated that the incorrect portion was minor and of no consequence. After reading the statement, defendant initialed it. Clearly, defendant adopted the statement as his own.

Furthermore, the only reason the statement was not a verbatim account was because Defendant would not allow Deputy Reams to write while defendant spoke.

We think the facts here are more closely akin to those disclosed in *State v. Braxton*, 294 N.C. 446, 242 S.E. 2d 769 (1978). There, on facts similar to those before us here, this Court stated:

> The written statement, which Officer Lovette testified he compiled from notes made by him of Burden's oral statements, was shown to Burden and, according to the testimony of the officers, signed by Burden. Under these circumstances, it is immaterial that the written statement was not, word for word, identical with the oral statement.

*Id.* at 461, 242 S.E. 2d at 778.

We hold again that it is not required by law for the statement or confession of an accused to be in his own handwriting or that the person taking the statement be required to repeat the exact words of the defendant. The summary statement of an accused reduced to writing by another person, where it was freely and voluntarily made, and where it was read to or by the accused and signed or otherwise admitted by him as correct shall be admissible against him. *See generally* 23 C.J.S., Criminal Law § 833(a) at 236 (1961 & Cum. Supp. 1979).

[2] Defendant also contends that even assuming we find no error in the preparation of the statement, it is apparent from the record that Deputy Reams' trial testimony was perjurious and presented in bad faith by the State. The record discloses that Deputy Reams had stated at the preliminary hearing that defendant's statement was in his own words, yet Reams conceded at trial that the statement was actually a summary of what defendant told him. In raising this assertion, defendant relies primarily on the decision of the United States Supreme Court in *Napue v.*

*Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959). There, the Court held that where, in a murder prosecution, an important witness for the state falsely testified that he had received no promise of consideration in return for his testimony, though in fact the assistant state's attorney had promised such consideration and did nothing to correct the false testimony of the witness, defendant was denied due process of law in violation of the fourteenth amendment to the United States Constitution. The Court cited the well-established rule that a conviction obtained through use of false evidence, known to be such by representatives of the state, must fall under the fourteenth amendment. The Court also noted that this principle does not cease to apply merely because the false testimony goes only to the credibility of the witness. The Court stated:

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

*Id.* at 269, 79 S.Ct. at 1177, 3 L.Ed. 2d at 1221.

The principles recited in *Napue* are laudable and firmly established. Obviously, this Court would not condone the practice of allowing the State to introduce at trial testimony which the State knew to be false. This would be true even though the State did not solicit the false evidence but allowed it to go uncorrected when it appeared. *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d 9 (1957) (per curiam). Clearly, however, the holding in *Napue* does not embrace the facts disclosed by the record before us. There, it was abundantly clear that the state permitted testimony knowing it to be false. Here, however, the State has simply presented a witness whose testimony is inconsistent in non-substantive respects with that given at the preliminary hearing. For example, the witness testified at the preliminary hearing that one of the decedents "jumped" the defendant, while at trial he testified that the decedent "lunged" at defendant. The various inaccuracies and inconsistencies by the witness are clearly not of the nature or severity as to indicate bad faith on the part of the State.

Defendant's first assignment of error is overruled.

State v. Boykin

[3] Defendant next contends that the trial court committed error in restricting his right to cross-examine Deputy Driver. The record reveals that at the conclusion of the defendant's evidence, the State recalled Driver to rebut testimony of the defendant. Driver had previously testified for the State and was extensively cross-examined and recross-examined at that time by defense counsel. On rebuttal, the court limited defendant to cross-examination only on the evidence presented in rebuttal testimony and not on Driver's earlier testimony. Defendant asserts this limitation was a violation of his constitutional right to confront the witnesses against him.

We are sensitive to the long-standing guarantee of the right to cross-examine one's adversarial witnesses. This right to confront is guaranteed by the sixth amendment to the United States Constitution, which is made applicable to the states by the fourteenth amendment, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965), and by Article 1, Section 23 of the North Carolina Constitution. The constitutional right to confront affirms the common law rule that in criminal trials by jury the witness must be present and subject to cross-examination under oath. *State v. Perry*, 210 N.C. 796, 188 S.E. 639 (1936).

However, it is also well established that the United States Supreme Court will not encroach upon the power of the states to make their own rules of evidence in their own courts so long as they serve a legitimate state purpose not prohibited by the provisions of the United States Constitution. *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606, *reh. denied*, 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed. 2d 125 (1967); *State v. Bumper*, 275 N.C. 670, 170 S.E. 2d 457 (1969). The rule in North Carolina which allows the trial judge to exercise his discretion in limiting cross-examination for the purpose of impeachment when it becomes repetitious or argumentative does not violate any provision of the United States Constitution. *State v. Bumper, supra.*

It is obvious from the record that the defendant was permitted to cross- and recross-examine this witness prior to the witness' rebuttal testimony. It is also obvious defendant reserved the right to recall this witness and did not do so. Thus defendant had *more* than ample opportunity to confront his witness. Any further cross-examination on rebuttal about Driver's original

testimony promised to be repetitious or argumentative. We find no abuse of the trial court's discretion to insure an orderly trial. Defendant's right to confront was amply protected. This assignment of error is overruled.

[4] In his third assignment of error defendant contends that the trial court committed prejudicial error in allowing Deputy Driver to testify about statements defendant made to him.

On direct examination, the witness Driver was allowed to testify that he received a telephone call from the defendant in which defendant told him about shooting the decedents and in which he gave Driver the decedents' location. Driver later testified as to other statements made to him by defendant. Defendant here argues that the witness was improperly allowed to testify to these statements because the court failed to make a finding of voluntariness as required by the United States Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964). We disagree. Our rule was stated in *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 541 (1970) as follows:

> The defendant misinterprets the necessity for the voir dire examination to determine the voluntariness of his admissions. . . . As a general rule, voluntary admissions of guilt are admissible in evidence in a trial. To render them inadmissible, incriminating statements must be made under some sort of pressure. Here we quote from the Supreme Court of the United States in *Hoffa v. United States*, 385 U.S. 293, [87 S.Ct. 408,] 17 L.Ed. 2d 374: "Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. . . .

*Id.* at 345, 172 S.E. 2d at 546.

Here, defendant was plainly under no pressure of any kind and voluntarily made his statements to the witness Driver. It is apparent from the record that Deputy Driver at no time attempted to interrogate the defendant, and, in fact, warned defendant that he did not have to tell the witness anything. Defendant replied that he knew his rights and still wanted to talk. It is abundantly clear that defendant was not subjected to an in-custody interrogation.

Moreover, the United States Supreme Court has held:

Even if the trial procedure was flawed with respect to the challenged confession, *Jackson v. Denno* does not entitled [a defendant] to a new trial if the State subsequently provided him an error-free judicial determination of the voluntariness of his confession — error-free in that the determination was procedurally adequate and substantively acceptable under the Due Process Clause. . . .

*Swenson v. Stidham*, 409 U.S. 224, 229, 93 S.Ct. 359, 363, 34 L.Ed. 2d 431, 436 (1972), *mod. on other grounds*, 410 U.S. 904, 93 S.Ct. 955, 35 L.Ed. 2d 266 (1973).

While the trial court here did not hold a *voir dire* hearing to determine the voluntariness of Driver's statement at the time of his direct testimony, it did hold one at the time of his rebuttal testimony and, after making adequate findings of fact, concluded that the statement made by defendant to Driver "was made voluntarily and knowingly, without any threat or promise to induce the defendant to make a statement. . . ." The findings and conclusions by the trial court are amply supported by the evidence and are therefore binding on this appeal. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971); *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied*, 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed. 2d 784 (1967). We agree with the trial court's findings that Deputy Driver went to the defendant's home in response to a telephone call, that Driver first saw defendant in the bedroom of his home where defendant started to talk with Driver about the shootings, that Driver interrupted the defendant to tell him he did not have to say anything and that defendant replied that he knew his rights and wanted to tell about it, that Deputy Driver never asked defendant any questions and never indicated he wanted defendant to tell him anything about the shootings, that Driver did not make any promise to the defendant and did not threaten him in any way and that Driver had intended to warn defendant of his full *Miranda* rights but defendant prevented him from doing so by continuing to talk about the shootings.

Defendant also argues under this assignment of error that some of the questions by the State on rebuttal were leading. It is well established that this is a matter within the discretion of the

trial court, *State v. Hood*, 294 N.C. 30, 239 S.E. 2d 802 (1978); *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed. 2d 301 (1976), and we find no abuse of that discretion.

**[5]** Defendant further contends that the trial court erred in allowing Driver's rebuttal testimony because new evidence was introduced in the rebuttal testimony. Assuming this is so, again it is well settled that order of proof of a matter is within the trial court's discretion and we find no abuse of that discretion from the record before us. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977). Defendant's contention that the rebuttal testimony constituted improper impeachment of his character is also clearly without merit.

This assignment of error is overruled.

Defendant next asserts that because the confession to Deputy Driver was involuntary, this influence continued to operate on the defendant so that his subsequent confession to Deputy Reams was also involuntary. Defendant relies on cases such as *Beecher v. Alabama*, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed. 2d 35 (1967) and 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed. 2d 317 (1972); and *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968). In those cases, a confession subsequent to an illegally obtained initial confession was ruled inadmissible when there was no appreciable "break in the stream" between the first and second statements. Having previously held that defendant's statements to Deputy Driver were not involuntary and therefore legally admissible, this contention by defendant is clearly meritless.

**[6]** In his sixth argument, defendant groups five assignments of error and 92 exceptions in contending that the trial court committed error in sustaining objections to defendant's cross-examination of the witnesses Driver and Reams. We have carefully reviewed each of the sustained objections and find that defendant's questions eliciting those objections (a) went beyond the scope allowable for cross-examination of a rebuttal witness, (b) called for speculation or legal conclusions, (c) called for hearsay answers or were repetitious, (d) called for answers already in evidence from other testimony or (e) were clearly irrelevant. Moreover, it is well established that the burden is on the defendant not only to show error, but to show prejudicial error. The

answers the witnesses would have given must be placed in the record in order to determine the alleged error was prejudicial. *State v. Shaw*, 293 N.C. 616, 239 S.E. 2d 439 (1977); *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed*, 423 U.S. 918, 96 S.Ct. 228, 46 L.Ed. 2d 367 (1975). In many instances, the answers the witnesses would have given were not reported in the record. We find no prejudicial error with respect to any of the noted exceptions and these assignments of error are overruled.

Defendant next contends that the trial court committed error in sustaining numerous objections by the State to the testimony of several defense witnesses. Again we have reviewed each of these numerous exceptions and hold that the defendant has shown no prejudicial error.

[7] Defendant next contends that the trial court erred in denying his motion to prevent private prosecution. He first argues that the State should be prevented from allowing private prosecution employed by the families of the deceased. He argues that the client of the private prosecutor is the family of the decedent and that such an attorney, in a case like this, is employed to seek the death penalty on behalf of his client. The State's prosecutor, on the other hand, has the paramount duty of seeing that justice is done, not that someone is vigorously prosecuted for murder in the first degree so that the families can be satisfied that they have exacted a vigorous prosecution. This Court has long rejected the argument that there is a conflict between these dual roles. The employment of private prosecution is a discretionary practice which has long been approved in North Carolina. *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed. 2d 1091 (1977); *State v. Best*, 280 N.C. 413, 186 S.E. 2d 1 (1972).

The trial court's discretion in allowing or disallowing private prosecution will be interfered with only upon a showing of abuse. *State v. Carden*, 209 N.C. 404, 183 S.E. 898, *cert. denied*, 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402 (1936).

[8] Here, the defendant contends that the trial court abused its discretion in allowing the employment of attorney Larry Diedrick because at the time attorney Diedrick was acting as private prosecutor, he was at the same time potentially a material witness for the defendant. Defendant argues that Mr. Diedrick had been

subpoenaed by him as a material witness in the case. Diedrick had represented the two deceased men in the shot-up truck episode and in the process had negotiated with defendant and decedents. Indeed, attorney Diedrick had negotiated and talked with the defendant and the decedents in court on the day of the shooting and, defendant argues, as a result was in a position to explain "the tenor of the conversation and the state of mind of the deceased men and defendant a few hours before the shooting."

Unquestionably, had attorney Diedrick been a material witness for the defense, it would have been improper for him to remain as private prosecution with the State. The conflict this would present deserves no extensive discussion. After hearing arguments of counsel, however, the trial court denied defendant's motion to prevent private prosecution and we think, on the facts disclosed by the record before us, that it did not abuse its discretion in so doing.

In the first place, the record discloses that attorney Diedrick was not subpoenaed as a witness by the defendant until 4:30 p.m. on Friday afternoon prior to the time this case was scheduled for trial the following Tuesday. While the trial court was hearing arguments on the motion, attorney Diedrick stated *inter alia*, to the court:

> I tell the [c]ourt very candidly that if I am a material witness as he maintains and an important witness to the defense and I am assured I will be called to testify, I have no desire to appear in the prosecution of the case. I agree with him, I don't think it would be proper for me to do that. But we are talking about something that is very speculative, Your Honor. I will be glad to tender myself for an interview by defense counsel or for a voir dire examination by the [c]ourt to make that determination now. . . . Let me say this without any reservation, Your Honor, I have got no qualms whatsoever about making full disclosure to the court or anyone who wants to know the entire extent of my knowledge of what transpired on that date. I have no reservation about that whatsoever.

. . . .

Again, if I was assured I would in fact be called, I will voluntarily withdraw from the case. I think that is the proper thing for me to do, Your Honor. I have no reservations about that but I want to be assured that this is what is going to happen because there has been a great deal of work and time and effort already put into the case by me.

At no time, before or after the motion, did the defendant indicate that he really intended to call attorney Diedrick as a witness. At no time, according to the record, did counsel for the defendant discuss with Mr. Diedrick what he wanted to know or request a *voir dire* for that purpose. Attorney Diedrick made it abundantly clear that he was willing to withdraw if he were assured that he would be called as a witness. The record also reveals that throughout the entire course of the trial attorney Diedrick was never called upon to testify on behalf of the defendant. Clearly, the defendant could have done so at any time and we have no doubt but that the trial court would have immediately ordered attorney Diedrick to withdraw from further participation in the case.

The State argues, not at all unpersuasively, that defendant subpoenaed attorney Diedrick as a witness not in an effort to secure testimony but in an attempt to prevent him from aiding in the prosecution of the case. We, of course, are in no position to make that final judgment. However, for the reasons stated above, and for the further reason that defendant has shown no prejudice, this assignment of error is overruled.

[9] Defendant next contends that the trial court erred in denying his motion that the State be prevented from questioning potential jurors on *voir dire* whether they were conscientiously opposed to capital punishment. He also argues that the trial court erred in excusing certain jurors for cause under North Carolina's present bifurcated trial scheme in capital cases under G.S. 15A-2000. Suffice it to say that the United States Supreme Court has approved a bifurcated trial procedure similar to ours where a single jury decides guilt or innocence in one phase of the trial and punishment in a separate phase. *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed. 2d 913, *rehearing denied*, 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed. 2d 158 (1976); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed. 2d 859, *rehearing denied*, 429 U.S. 875, 97

S.Ct. 197, 50 L.Ed. 2d 158 (1976). Moreover, our review of the record indicates that the questions asked the potential jurors in this case concerning their belief about capital punishment and the trial court's rulings thereon were in full compliance with the mandate of the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968). Defendant's assignments of error grouped under this contention are overruled.

[10]  We finally discuss defendant's last contention that the trial court erred in denying his motion to set aside the verdict as being against the greater weight of the evidence. In doing so, we say for the benefit of counsel for the defendant, that we have complied with his request that the entire record of this proceeding be read. It has been read more than once. We glean from the record before us that the two men killed by this defendant had been guilty themselves of violent behavior in the past. It is also apparent that extreme hostility existed between the decedents and this defendant. The evidence presented to the jury by the State, however, pointed to the guilt of this defendant. Medical evidence established that both decedents were killed by shots in the back of their heads. No weapons were found in the area or on either of the victims. The evidence established defendant demonstrated no remorse at the death of the victims and, indeed, indicated his approval of their condition. A motion to set aside the verdict as being contrary to the greater weight of the evidence is addressed to the discretion of the trial judge and is not reviewable on appeal in the absence of abuse of that discretion. *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Vick, supra.* Here, no abuse of discretion has been shown. The jury was properly presented with evidence of both the State and the defendant and rendered its verdict for the State.

We have carefully reviewed the defendant's many assignments of error, those discussed and those deemed unworthy of discussion, and find all of them devoid of merit. We think defendant had a fair trial, free from prejudicial error.

No error.